```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
EDDIE WATERS,                       :
                                    :
            Plaintiff,              :   Civ. No. 19-8811 (NLH) (AMD)
                                    :
      v.                            :   OPINION
                                    :
JARRELL SAEZ, et al.,               :
                                    :
            Defendants.             :
_____ :
```

APPEARANCES:

Solomon Mordechai Radner, Esq.
Johnson Law, PLC
Excolo Law PLLC
535 Griswold St.
Suite 2632
Detroit, MI 48226

Conrad J. Benedetto, Esq.
The Law Offices of Conrad J. Benedetto
1615 S. Broad Street
Philadelphia, PA 19148

    Attorneys for Plaintiff

Gurbir S. Grewal, New Jersey Attorney General
Michael T. Moran, Deputy Attorney General
State Of New Jersey, Office of the Attorney General
25 Market St.
PO Box 116
Trenton, NJ 08625

    Attorneys for Defendant Ron Henry

HILLMAN, District Judge

Defendant Sergeant Ron Henry moves to dismiss Plaintiff Eddie Waters' amended complaint. ECF No. 50. For the following reasons, the motion will be granted.

I. BACKGROUND

The Court limits its recitation of the facts to those necessary to resolve the present motion. On August 1, 2017, Plaintiff was being processed into the Cumberland County Jail in Bridgeton, New Jersey on a defiant trespassing charge. ECF No. 29 ¶ 22. He was placed into a cell with two other people. Id. ¶ 23. Plaintiff "exchanged words" with Defendant Officer Saez; Officer Saez subsequently put Plaintiff in handcuffs and removed the other two people from Plaintiff's cell. Id. ¶¶ 24-25. Afterwards, Officer Saez assaulted Plaintiff, who was still handcuffed, in the cell. Id. ¶ 26. Other officers arrived and helped to assault Plaintiff. Id. ¶ 27. Officer Saez later resigned from the Cumberland County Department of Corrections. Id. ¶ 41.

Sgt. Ron Henry of the Cumberland County Prosecutor's Office took part in investigating the incident. Id. ¶ 46. Plaintiff alleges that Sgt. Henry "instructed the Special Investigations Unit investigator that, pending a legal review, the investigator was not to interview Defendant Saez or any of the individuals physically involved." Id. ¶ 45. "Sgt. Henry specifically instructed the investigator to only interview the officers that

were present, but not physically involved and not to interview the officers involved in the incident." Id.

Plaintiff filed his original complaint on March 21, 2019 against the Cumberland County officers and medical personnel who allegedly did not treat Plaintiff's injuries. ECF No. 1. Magistrate Judge Donio granted Plaintiff's motion to file his amended complaint, ECF No. 28, and Plaintiff filed the amended complaint on January 31, 2020, ECF No. 29.

Count IV of the amended complaint includes an allegation that Sgt. Henry is liable as a supervisor for the actions of the Cumberland County officers because he attempted to cover up their actions. Id. ¶ 90. Sgt. Henry now moves to dismiss this claim, the only allegation against him in the amended complaint, under Federal Rules of Civil Procedure 12(b)(1) and (6). ECF No. 50. Plaintiff opposes the motion. ECF No. 51.

II. STANDARD OF REVIEW

A party may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The court's jurisdiction may be challenged either facially based on the legal sufficiency of the

3

claim or factually based on the sufficiency of a jurisdictional fact.  Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000), modified on other grounds by Simon v. United States, 341 F.3d 193 (3d Cir. 2003).

A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  The defendant bears the burden of showing no claim has been stated.  "In contrast, in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction.  The plaintiff has the burden of persuasion to convince the court it has jurisdiction."  Gould Elecs., 220 F.3d at 178.

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party.  A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Although Rule 8 does not require "detailed factual allegations,"

4

it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).  "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." Id. at 790.

III. DISCUSSION

A.   Eleventh Amendment Immunity

Sgt. Henry argues the claim against him in his official capacity must be dismissed as he is entitled to sovereign immunity.  Here, Sgt. Henry is making a facial attack that Plaintiff's claims are barred by sovereign immunity and, therefore, the Court accepts the allegations in the amended

5

complaint as true and utilizes the standard for dismissal under Rule 12(b)(6).

The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

Counties and municipalities are not entitled to Eleventh Amendment immunity. Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 857 (3d Cir. 2014). The state must be "the real party in interest" for Sgt. Henry to be entitled to Eleventh Amendment immunity in his official capacity. Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 658 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989). "To determine whether the state is the real party in interest, this Court considers three factors: (1) whether the money to pay for the judgment would come from the state; (2) the status of

6

the agency under state law; and (3) what degree of autonomy the agency has." Estate of Lagano, 769 F.3d at 857.

  1. Source of Funds

The New Jersey Supreme Court has "held that when county prosecutors and their employees are involved in law enforcement functions under general State supervisory authority, the State should bear the responsibility for defense and indemnification for litigation generated by such activities." Gramiccioni v. Dep't of Law & Pub. Safety, 235 A.3d 129, 131 (N.J. 2020) (requiring state to defend and indemnify county prosecutor's office in federal action under § 1983) (citing Wright v. State, 778 A.2d 443 (N.J. 2001)). "[T]he test for determining in which capacity a county prosecutor acts should 'focus on whether the function that the county prosecutors and their subordinates were performing during the alleged wrongdoing is a function that traditionally has been understood to be a State function and subject to State supervision in its execution.'" Id. at 141 (quoting Wright, 778 A.2d at 463).

The New Jersey Attorney General's Office has entered an appearance on behalf of Sgt. Henry. ECF No. 45. The Attorney General's Office further states that "[a]ny judgment rendered against Sergeant Henry would derive from the State of New Jersey, as the State has a duty to indemnify and defend county prosecutors and their subordinates." ECF No. 50-1 at 25

7

(internal quotation marks omitted). See also Chasin v. Montclair State Univ., 732 A.2d 457, 461 (N.J. 1999) ("The State's duty to indemnify an employee parallels the duty to defend. N.J.S.A. 59:10-1 requires the State to indemnify employees for whom a defense is provided."). "Based on this statement, the fact that the Office of the Attorney General is representing [Sgt. Henry], and the New Jersey Supreme Court's explanation of the State's obligations in Wright, the State appears to have agreed to represent and indemnify [Sgt. Henry], satisfying the first Fitchik factor." Hof v. Janci, No. 17-295, 2017 WL 3923296, at *3 (D.N.J. Sept. 7, 2017).

   2.   Status Under Law

The second factor focuses on the status of the agency under state law. The focus of the second factor is "whether state law treats an agency as independent, or as a surrogate for the state." Fitchik, 873 F.2d at 662. "The office of county prosecutor in the State of New Jersey is a constitutionally established office." Coleman v. Kaye, 87 F.3d 1491, 1500 (3d Cir. 1996). "Each prosecutor [is] vested with the same powers and [is] subject to the same penalties, within his [or her] county, as the attorney general shall by law be vested with or subject to . . . ." N.J.S.A. § 2A:158-5.

"It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of

all the tools lawfully available to them to combat crime, they act as agents of the State." Coleman, 87 F.3d at 1499. As Sgt. Henry's investigation was related to the law enforcement duties of the prosecutor's office, he is not treated as an independent entity. See Hof, 2017 WL 3923296, at *4; Gramiccioni v. Dep't of Law & Pub. Safety, 235 A.3d 129, 141 (N.J. 2020). The second Fitchik factor is satisfied.

3. Degree of Autonomy

Finally, the Court must consider the degree of autonomy the prosecutor's office has from the State. The County Detectives and County Investigators Act "authorizes the prosecutor to appoint persons 'to be known as county detectives, to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law.'" Dunne v. Fireman's Fund Am. Ins. Co., 353 A.2d 508, 511 (N.J. 1976) (quoting N.J.S.A. § 2A:157—2). Although there is an employer-employee relationship with the county, an investigator "whose actions do involve the enforcement of the criminal laws does not enjoy a comparable degree of autonomy from the State government." Wright v. State, 778 A.2d 443, 464 (N.J. 2001). "We are persuaded that when county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the

responsibility of the State and for which the Attorney General is ultimately answerable." Id.

As part of his investigation, Sgt. Henry would be required to interpret and apply any guidelines and directives regarding the use of force by law enforcement officers.[1] "Training and policy decisions that require legal knowledge and discretion are related to prosecutorial functions and are unlike administrative tasks concerning personnel." Hyatt v. Cty. of Passaic, 340 F. App'x 833, 836–37 (3d Cir. 2009) (citing Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009)). As Sgt. Henry would be bound by any applicable guidelines on the use of force, he would not have been autonomous from the State during his investigation. See Gramiccioni v. Dep't of Law & Pub. Safety, 235 A.3d 129, 144-43 (N.J. 2020) (State required to indemnify prosecutor's office in § 1983 action because prosecutor and detectives had to interpret and apply Attorney General's Directive on returning firearms seized from police officers because of accusations of domestic violence). The third Fitchik factor is satisfied.

---

[1] "A corrections officer is a law-enforcement officer with full police powers, N.J.S.A. 2A:154-4." Matter of Tonner, No. A-2071-18T2, 2019 WL 7287112, at *5 (N.J. Super. Ct. App. Div. Dec. 30, 2019).

4. Conclusion

The Court finds that the Fitchik factors have been satisfied. Therefore, Sgt. Henry acted on behalf of the State during his investigation, and he is entitled to share in the State's Eleventh Amendment immunity in his official capacity.

B. Supervisory Liability

In his individual capacity, Sgt. Henry moves for dismissal of the sole count against him for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff alleges he "attempted to cover up the assault of Mr. Waters and ordered the special investigator not to interview those accused of assaulting Mr. Waters. Defendant Sgt. Henry at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of Defendant Officers." ECF No. 4 ¶ 90.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A supervisor may be liable for the actions of a subordinate if they "established and maintained a policy, practice or custom which directly caused the constitutional harm," or "participated in violating Plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced to" their subordinate's

violations. A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 585 (3d Cir. 2004).

Of course, in order to be liable under either theory of supervisory liability one must in fact be the supervisor of the other actors. "As a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have 'acquiesced' in the latter's conduct." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), overruled on other grounds by, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

"General tort principles provide a useful analogy. . . . A claim against a 'master' based on a tort committed by a 'servant' bears a resemblance to a § 1983 claim against a government supervisor based on a constitutional tort committed by a subordinate, but a person cannot be a 'master' unless he or she has 'the right to control the physical conduct' of the servant." Id. (quoting Restatement (Second) of Agency § 2(1) (1958)). Sgt. Henry is employed by the Cumberland County Prosecutor's Office. ECF No. 29 ¶ 46. The officers involved in the assault were employed by the Cumberland County Department of Corrections. The Department of Corrections and the prosecutor's office are two separate entities. Plaintiff has not alleged any facts in the amended complaint that indicate Sgt. Henry had

12

control or the right to control the officers' physical conduct in the performance of their jobs.

Plaintiff asserts Sgt. Henry has supervisory authority over the corrections officers because Professional Standard Units supervise officers regardless of which agency employs them. ECF No. 51 at 8. "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). There are no facts in the complaint that support Plaintiff's conclusory statement. Investigatory powers are different than supervisory powers; Plaintiff does not allege Sgt. Henry can hire new corrections officers, fire the corrections officers, set their work schedule, or exert any control over their day-to-day activities in any manner. See Vance v. Ball State Univ., 570 U.S. 421, 424 (2013) (holding that for Title VII purposes, a person is a supervisor "if he or she is empowered by the employer to take tangible employment actions").

Plaintiff cites Shirden v. Cordero, 509 F. Supp. 2d 461 (D.N.J. 2007) for the proposition that "Professional Standard Units in the state of New Jersey, like the Cumberland County Prosecutor's Office's Professional Standards Unit for which Defendant Henry operates in his individual capacity, has supervisory authority over individual officers outside of the

13

prosecutor's office." ECF No. 51 at 8. In addition to Shirden not being binding precedent on this Court, Plaintiff misstates the holding of the case and New Jersey law.

Plaintiff accurately describes Shirden as concerning a police officer who alleged he was reassigned in retaliation for speaking to the press. The accuracy in Plaintiff's description of the case ends there. At no time did Judge Martini hold, or even state in dicta, that Professional Standards Units had supervisory authority over officers outside of their agencies as a matter of New Jersey law. The Professional Standards Unit in that matter investigated Shirden's statements to the press that the East Orange Police Department had given instructions to officers to conduct legally suspect search and seizures of African American men. 509 F. Supp. 2d at 464. The results were referred to the city attorney, who recommended proceedings against Shirden. Id. at 464-65. Shirden was subsequently reassigned and later suspended by the Police Director. The Professional Standards Unit's role was limited to investigating Shirden's statements and there is no suggestion that it had any supervisory authority over Shirden. Notably, Shirden did not sue the Professional Standards Unit. Nothing in Shirden supports Plaintiff's claim that the ability to investigate an officer makes the Professional Standards Unit a supervisor.

14

Plaintiff cannot assert supervisor liability against someone who was not a supervisor.  Plaintiff belatedly asserts Sgt. Henry's actions were tantamount to "evidence of a custom or policy of a supervisory official to condone and permit such Constitutional violations."  ECF No. 51 at 11.  Policy or practice liability is still supervisory liability.  A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 585 (3d Cir. 2004).  As Sgt. Henry is not the officers' supervisory, Plaintiff cannot state a claim against Sgt. Henry based on a theory of supervisory liability.

Because Plaintiff has not stated a claim of a violation of his federal rights, Sgt. Henry is also entitled to qualified immunity.  See Reichle v. Howards, 566 U.S. 658, 664 (2012) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.").

IV. CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted and the claim against Sgt. Henry dismissed.  Fed. R. Civ. P. 12(b)(1), (6).  An appropriate Order follows.


Dated: December 15, 2020                s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.